Opinion filed July 16, 2020

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15-CF-595 |
| PATRICK MANNING, | ) ) ) | Honorable John J. Kinsella, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Presiding Justice Birkett and Justice Hutchinson concurred in the judgment and opinion.

**OPINION**

¶ 1   Following a trial before a six-person jury, defendant, Patrick Manning, was convicted of residential burglary (720 ILCS 5/19-3(a) (West 2014)).   He appeals, contending that (1) the trial court should have instructed the jury on the lesser included offense of criminal trespass to residence, and (2) he did not knowingly waive his right to a 12-person jury.   We disagree and affirm.

¶ 2                                 I. BACKGROUND

¶ 3   Defendant was charged with residential burglary.   The indictment alleged that on March 6, 2015, defendant, "without authority, knowingly entered the dwelling place of Deborah Lyons *** with the intent to commit therein a theft."

¶ 4    The day before trial, the following colloquy occurred:

"THE COURT: Okay.    We have motions *in limine* filed by both sides in anticipation of a trial.   We are going to start jury selection tomorrow morning.   You indicated a jury of six; is that correct?

MR. ARD [(DEFENSE COUNSEL)]: Yes, Judge.

THE COURT: Is that correct, Mr. Manning?

THE DEFENDANT: Yes, sir."

¶ 5    The first witness, Michael Padecky, testified that on March 6, 2015, he lived with his wife, Blanche; stepdaughter, Abigail Kelly; and mother-in-law, Deborah Lyons.   Around noon, he was home with Kelly, Lyons having left about 10 minutes earlier.   Padecky was changing clothes in his bedroom when he heard pounding from near the back door.   He thought Kelly was making the noise, so he went into the hall and asked her what was going on.   She said that she did not make the noise.

¶ 6    Padecky went into the kitchen and saw a man he identified as defendant standing in the kitchen.   Padecky did not recognize defendant and did not invite him in.   He asked him what he was doing in his house.   Defendant said, " '[D]oes Craig live here; Craig owes me money.' " Padecky replied that Craig did not live there and that defendant needed to leave.   Defendant turned and ran out.   Padecky noticed that the back-door lock and doorjamb were broken and the door was "kicked in."   He had used that door earlier in the day and did not notice any damage.

¶ 7    Kelly largely corroborated Padecky's testimony.   She added that the man, whom she could not identify, wore a black Advocate Healthcare jacket similar to one that her grandmother had.

¶ 8    Lyons testified that she left the house shortly before noon.   About 10 minutes later, Padecky called and said that someone had broken into the house.   She returned to find damage to

the back door that had not been there when she left. The only "Craig" she knew was a man who had dated her sister about 25 years ago.

¶ 9     The State played portions of recordings of calls defendant made from jail. Defendant called Lawrence Reckner and his wife, Sandra Hollis. The State played portions of recordings of those calls. In a call to Reckner, defendant said that he "messed up" and "caught an attempt residential burglary" in Downers Grove. He said that he was trying to get money because he "didn't have money to make it." He added that he "didn't break anything" or "take anything" because he could not go through with it.

¶ 10    In the first of three calls to Hollis, defendant said that he did not go into the house or take anything. In a second call, he said that he was "trying to get extra money to do some things." Hollis said that her job was in jeopardy because a sketch was circulating of defendant wearing her Advocate Healthcare jacket. Defendant said that he "tried it. It didn't happen. It didn't feel right," so he walked away. In the final call, Hollis accused him of lying to her about what happened. Defendant said that he "almost did something" but "didn't do it."

¶ 11    The defense asked that the jury be instructed on the lesser included offense of criminal trespass to residence. The court denied the request. The jury found defendant guilty of residential burglary, and the court sentenced him to 19 years, 9 months in prison. Defendant timely appeals.

¶ 12                                    II. ANALYSIS

¶ 13 Defendant first contends that he was entitled to an instruction on criminal trespass to a residence (*id.* § 19-4(a)). A defendant generally may not be convicted of an offense with which he has not been charged. *People v. Ceja*, 204 Ill. 2d 332, 359 (2003). However, in an appropriate case, a defendant is entitled to have the jury instructed on less serious offenses that are included in

the charged offense. *Id.* This provides the jury with an important third option. *Id.* If a jury believes that a defendant is guilty of something, but uncertain whether the charged offense has been proved, it might convict him or her of the lesser offense rather than convict or acquit the defendant of the greater offense. *Id.* at 359-60. In deciding whether to provide an instruction on the lesser offense, the court "must examine the evidence presented and determine whether the evidence would permit a jury to rationally find the defendant guilty of the lesser-included offense, but acquit the defendant of the greater offense." *Id.* at 360. Conversely, where the evidence shows that a defendant is either guilty of the greater offense or not guilty of any offense, no additional instruction is necessary. *People v. Austin*, 216 Ill. App. 3d 913, 917 (1991) (citing *People v. Moore*, 206 Ill. App. 3d 769, 774 (1990)).

¶ 14     As for "the quantum of evidence that is required for a trial court to give a jury instruction on a lesser-included offense," the defendant is entitled to the instruction if there is "*some evidence* in the record that, if believed by the jury, will reduce the crime charged to a lesser offense[.]" (Emphasis in original.) *People v. McDonald*, 2016 IL 118882, ¶¶ 23, 25. When the trial court decides that there is insufficient evidence to justify giving the tendered instruction, we review that decision for an abuse of discretion. *Id.* ¶ 42.

¶ 15     A person commits residential burglary when he or she knowingly and without authority enters another's dwelling to commit a theft or any felony. 720 ILCS 5/19-3(a) (West 2014). A person commits criminal trespass to a residence when without authority he or she knowingly enters or remains within any residence. *Id.* § 19-4(a). Thus, the only element missing from the lesser offense is the intent to commit a theft or felony.

¶ 16     In *Austin*, which the trial court cited, we agreed with the defendant that criminal trespass to residence was a lesser included offense of residential burglary but did not agree that the trial

court abused its discretion in not instructing the jury on the lesser offense. The indictment in *Austin* charged the defendant with residential burglary in that he entered a home with the intent to commit either a theft or unlawful restraint. 216 Ill. App. 3d at 915. Evidence showed that the defendant entered the house at 2:30 a.m. The occupant awoke to find him with one hand near her mouth and the other moving to turn out the light. The defendant was wearing rubber gloves on a hot July night. The only defense raised was misidentification. *Id.* We held that the evidence showed that the defendant was either guilty of residential burglary or was not guilty of any crime. *Id.* at 917. The evidence disclosed no other reason for his being in the house at that hour.

¶ 17 Defendant argues that *Austin* is distinguishable. He points to the recorded conversations in which he claimed that he initially intended to commit a theft in the house but changed his mind before doing so. However, this evidence would not have allowed the jury rationally to acquit defendant of residential burglary but find him guilty of criminal trespass. If the jury believed defendant's vague and sometimes contradictory statements on the recordings, he either (1) abandoned his plan and never entered the house or (2) broke into the house intending to steal money but changed his mind. In the former case, he would not be guilty of any offense. In the latter case, he would be guilty of residential burglary because the statute requires only an entry with the *intent* to commit a theft, not an actual theft. Thus, the jury could not have rationally convicted defendant of criminal trespass but not residential burglary.

¶ 18 Defendant seems to suggest that he went to the house with the intent to steal, changed his mind about stealing, but proceeded to enter the house anyway. The inference that defendant suffered a sudden crisis of conscience about stealing but decided to enter the house for some other reason is simply not rational. A lesser included offense instruction is required only where the jury

could *rationally* find the defendant guilty of the lesser offense and not guilty of the greater offense. *Id.*

¶ 19    Defendant next contends that he did not knowingly waive his right to a 12-person jury. He argues that the record does not show that he was informed that he had the right to a 12-person, as opposed to a 6-person, jury.   Both the federal and state constitutions guarantee the right to a jury trial in criminal cases.   U.S. Const., amend. VI; Ill. Const. 1970, art. I, §§ 8, 13. Accordingly, section 115-1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-1 (West 2014)) provides that "[a]ll prosecutions except on a plea of guilty or guilty but mentally ill shall be tried by the court and a jury unless the defendant waives a jury trial in writing."   The general understanding is that a jury consists of 12 members.   Thus, the Code provides that, where a defendant elects a trial by jury, "[t]he jury shall consist of 12 members."   *Id.* § 115-4(b). "Nevertheless, a 12-person jury is not absolutely required, for a defendant's right to waive his right to a jury trial entirely necessarily includes the right to waive a jury composed of 12 members." *People v. Dereadt*, 2013 IL App (2d) 120323, ¶ 15 (citing *People ex rel. Birkett v. Dockery*, 235 Ill. 2d 73, 78 (2009)).   Thus, in *People v. Scudieri*, 363 Ill. 84, 87 (1936), the supreme court found no error in proceeding to trial with an 11-person jury after the defendant had agreed to the lesser number because a full panel was unavailable.

¶ 20    To be valid, a jury waiver must be knowing and understanding.   *People v. Frey*, 103 Ill. 2d 327, 332 (1984).   A court need not give any particular admonishments or advice to effect a valid jury waiver.   *People v. Bracey*, 213 Ill. 2d 265, 270 (2004).   Given that a defendant typically speaks and acts through his or her attorney, jury waivers are typically valid when made by defense counsel in a defendant's presence where the defendant does not object.   *Frey*, 103 Ill. 2d at 332.

¶ 21     That is what happened here.   Defense counsel, in open court with defendant present, stated that defendant wanted to proceed with a six-person jury.   Defendant affirmatively ratified counsel's statement, saying that that was what he wanted.   Thus, under existing precedent, the waiver was valid.   But, citing *People v. Matthews*, 304 Ill. App. 3d 415 (1999), defendant insists that either defense counsel or the trial court had to inform him specifically that he had the right to a 12-person jury.

¶ 22     In *Matthews*, defense counsel, in chambers with defendant present, stated, " 'I think we will be asking for a six[-]person jury.' "   *Id.* at 416.   A docket entry stated, " 'Defendant waives jury of 12 and requests jury of six.' "   *Id.* at 417.   The court found the waiver of a 12-person jury invalid where

> "nothing in the record indicate[d] that defendant was aware of his right to a 12-person jury.
> Nothing in the record indicate[d] that defendant agreed to a jury of fewer than 12 members,
> *** or acquiesced in a jury of six.   Prejudice may be presumed where defendant was
> unaware of his right to a 12-person jury and neither agreed to nor acquiesced in a decision
> to waive the full number of jurors."   *Id.* at 419-20.

Because neither element was present in that case, the purported waiver was invalid.

¶ 23     In *Dereadt*, we rejected the defendant's contention that *Matthews* required that in every case a defendant be informed of his right to a 12-person jury.   We first summarized the holding of *Matthews* as "defendant may waive the right to a jury of 12 and proceed with a lesser number, as long as the waiver is affirmatively shown on the record."   *Dereadt*, 2013 IL App (2d) 120323, ¶ 15 (citing *Matthews*, 304 Ill. App. 3d at 419-20).   Although we stated in *dicta* that "the [*Matthews*] court's primary concern was that the defendant was not aware of his right to a 12-person jury and could not, under the circumstances, be deemed to have acquiesced in a trial by a

lesser number," this statement was made with the understanding that the record in *Matthews* did not show a valid waiver or acquiescence. *Id.* ¶ 17. Because Dereadt's attorney had waived a jury in his presence without objection, we upheld the waiver. *Id.* ¶ 20. We noted that defense counsel said that she had spoken with the defendant " 'about whether he would want a jury of six and twelve.' " *Id.* However, we noted that this only made the case for a valid waiver "stronger." *Id.* We did not indicate that the waiver would have been invalid absent counsel's conversation with Dereadt. Indeed, we also cited with approval *People v. Barrier*, 359 Ill. App. 3d 639 (2005). There, defense counsel stipulated, in the defendant's presence, to proceed with 12 jurors and no alternates. When a juror became ill, the case proceeded with 11 jurors. The reviewing court held that defense counsel's stipulation in the defendant's presence to proceed with no alternate jurors strongly implied the defendant's awareness of the right to a 12-person jury and her acquiescence in proceeding with less than that number if a juror became ill. *Id.* at 643-44; see also *People v. Harper*, 2017 IL App (4th) 150045, ¶ 32.

¶ 24 We granted the State's motion to cite as additional authority *People v. Bochenek*, 2020 IL App (2d) 170545. There, defense counsel, with the defendant present, said, " 'we would be asking for a jury of six. I already spoke to my client about it.' " *Id.* ¶ 44. Defendant did not object. *Id.* Later, counsel affirmed that he had discussed with the defendant whether to proceed with a six-person jury. Defendant affirmed that it was his choice to proceed with a six-person jury. *Id.* We found the waiver valid, finding no reason to treat the defendant's acquiescence differently than the waiver of an entire jury. *Id.* ¶ 50.

¶ 25 These cases establish the rule that, as in cases of a complete jury waiver, a defendant's acquiescence in defense counsel's waiver is presumptively valid. Only if the record does not affirmatively show such a waiver or acquiescence will courts look further to ensure that a

defendant was at least aware of the right to a 12-person jury. To hold otherwise would be to impose, illogically, more stringent requirements for the waiver of half a jury than for the waiver of a whole one.

¶ 26    Here, defendant did not object when defense counsel requested a six-person jury. Moreover, he affirmatively assured the court that that was his desire.   In the absence of anything in the record to the contrary, we presume that defendant's affirmative statement "strongly implied" his "awareness of the right to a 12-person jury." *Dereadt*, 2013 IL App (2d) 120323, ¶ 19.

¶ 27                                III. CONCLUSION

¶ 28    The judgment of the circuit court of Du Page County is affirmed.

¶ 29    Affirmed.

---

**No. 2-18-0042**

---

| | |
|---|---|
| **Cite as:** | *People v. Manning*, 2020 IL App (2d) 180042 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 15-CF-595; the Hon. John J. Kinsella, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Jessica Wynne Arizo, of State Appellate Defender's Office, of Elgin, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman and Amy M. Watroba, Assistant State's Attorneys, of counsel), for the People. |

---